HON. JOSEPH WILLIAMS, CHIEF JUSTICE.
" GEORGE GREENE, JUDGE.

———•◦•———

2g 329
92 482

### GOODWIN *et al.* *v.* THOMPSON.

A father cannot recover damages against a person for procuring the marriage of his daughter who in good faith and without force or imposition entered into a marriage contract, when between 12 and 14 years of age.

The statute which provides that male persons of the age of eighteen years, and female persons of the age of fourteen years may be joined in marriage, is merely cumulative and does not abrogate the common rule, which fixes the age of marriage consent for males at fourteen and for females at twelve years of age.

A rule of common law is not repealed by implication.

The right of a husband over his wife is paramount to that of her parent.

*Error to Dubuque District Court.*

*Opinion by* WILLIAMS, C. J. Rufus Thompson instituted his action for trespass on the case against Archibald Goodwin, John Gilson and Benjamin Alcorn, in the dis-

41

trict court of Dubuque county, to recover damages for en-
ticing and procuring his daughter Louisa Thompson, to
marry one Jefferson Goodwin against his consent, thereby
depriving him of his right to the control, guardianship,
society and service of the said Louisa, she being his daugh-
ter and a minor.

When the cause was called for trial in the district court,
the attorneys for the parties appeared. Whereupon the
attorneys for the defendants filed their general demurrer
to the first count in the plaintiff's declaration upon which
issue was taken. The demurrer was overruled. The par-
ties by their attorneys, then filed of record in the case,
the following agreements:

"It is agreed between the parties to this cause, that a
marriage license was issued by the clerk of the district
court of Jackson county, to Jefferson Goodwin, in the
month of March last, authorizing any legal officer to sol-
emnize marriage between Jefferson Goodwin and Louisa
Thompson, and that by virtue of said license, said parties
were married in Jackson county, in said month of March,
by an acting justice of the peace, in said county, and that
this agreement is to stand in lieu of, and be equivalent to
a certified copy of the records of the clerk of the district
court of Jackson county, of said marriage."

"It is also agreed by the parties, that this cause shall
be continued to the next term of this court for trial on the
merits. That the cause in the meantime, shall be tried
in the supreme court on the demurrer to the first count in
the declaration, and that the issue is to be made up to all
the counts within ten days after the session of the supreme
court in July next. The costs to abide the final event of
the suit. This agreement to be part of the record."

These agreements were signed by the attorneys of the
parties and are of record in the case.

The only question for adjudication, is presented by the
defendants' general demurrer to the first count of the plain-
tiff's declaration.

In this count, the plaintiff complains, "that the said de-

fendants combining and confederating together, and contriving, &c., to injure and aggrieve the said plaintiff, and to deprive him of the service and assistance of one Louisa Thompson, the daughter and servant of the said plaintiff, and a minor under the age of fourteen years; as also to deprive the said plaintiff of the company, society, guardianship, education, nurture, control and service of his said daughter, heretofore, to wit: on the tenth day of February, in the year of our Lord one thousand eight hundred and forty nine, and on divers days and times between that day and the filing of this declaration, at the county aforesaid, did unlawfully, wrongfully, unjustly, wickedly and fraudulently entice, persuade and procure the daughter and servant of the said plaintiff, to depart from and out of the care, control, guardianship and service of him, the said plaintiff, and to marry one Jefferson Goodwin, to wit: at at the county aforesaid." The declaration then proceeds to aver, that in consequence of the procurement, and enticement aforesaid, the said Louisa the daughter and servant of the plaintiff, departed from and left the house, care, guardianship and control of the plaintiff aforesaid, and continued to the time of the commencement of this suit from his care, control, &c. Then follows the allegation, that the plaintiff has sustained great damage by reason of the loss of her society, service, expenditure of money and time in his endeavors to procure her return, anxiety and trouble of mind, &c. All of which doings, he avers was without his knowledge or consent, and against his will. Damages are alleged to the amount of two hundred dollars.

The only question to be decided, is this. Can a father maintain an action of trespass on the case, and recover damages for the loss of service &c, against a person or persons, for procuring the marriage of his daughter, who is a minor; when she has voluntarily and in good faith, entered into the marriage contract without any allegation of force or imposition having been practiced on her, by her husband or the defendants, so far as the marriage is

concerned, and when the marriage has been legally solemnized, in good faith?

By the agreement of the parties of record in the case, it appears that the marriage was voluntarily contracted and solemnized in accordance with the law of the state, and it does not appear that there is any complaint on part of the parties to the marriage contract, the husband and wife. The action is simply at the instance of the father for damages alleged to have been sustained, for the loss of his daughter's service, society, &c.

The legislature of this state have enacted, "that male persons of the age of eighteen years and female persons of the age of fourteen years, not nearer of kin than first cousins, and not having a husband, or wife living, may be joined in marriage. *Provided, always,* That male persons under twenty one years, female persons under the age of eighteen years, shall first obtain the consent of their father respectively, or in case of the death or incapacity of their fathers, then of their mothers or guardians." The statute also provides, that ministers of the gospel complying with its requisites, and justices of the peace, may solemnize the marriage contract; and directs that a marriage license shall, before marriage, be issued by the clerks of the district court of the county, wherein the ceremony shall be performed.

The 11th section of the act, imposes a forfeiture of five hundred dollars on any justice or minister, who shall solemnize any marriage within the state, without a compliance with the statute, and also forbids any unauthorized person to solemnize the contract under the same penalty.

By the common law, marriage is held to be a civil contract. To render the contract valid, the parties must be willing and able to contract. The age of consent for a female has been fixed by the civil law at twelve years, and the male at fourteen. Under that law, if the parties were under the age prescribed, the marriage was only held to be inchoate and imperfect; and when either of them arrived at the age of consent aforesaid, they might disagree

and declare the marriage void. The canon law, however, had regard to the constitution, more than the age of the parties, and therefore, held. that if they were in that respect competent, the marriage was good, whatever the age might be. By the common law of England, it was held that if a marriage was solemnized between parties, who had not arrived at the age of consent; still, when they arrived at that age, if they agreed to continue together, as man and wife, they need not be married again. Black. Com. 436, 437.

The same principles are recognized as being established by the common law, by chancellor Kent in his 2 Commentary, 78. Discussing the common law, as to the capacity of persons to make the marriage contract, after fixing fourteen years for males and twelve years for females, as the age of consent, he proceeds to say, that "the law supposes that the parties at that age have sufficient discretion for such contract, and they can then bind themselves irrevocably, and cannot be permitted to plead even their . egregious indiscretion, whatever the result of it may be. Marriage before that age is voidable at the election of either party on arriving at the age of consent, if either of the parties be under age when the contract is made."

Such being the common law in force, within this state, it is clear that this marriage is not void, notwithstanding the statute. Statutes will not be construed to have an effect beyond that which is to be gathered from the plain and direct import of the terms used in declaring them. Effect by implication, will not be given to them, so as to change a well established principle of common law.

The act regulating marriages within this state, merely declares what description of persons "may be joined in marriage," and what are the respective duties of ministers and justices of the peace, who are authorized thereby to solemnize the marriage contract. By it, the solemnization of the contract by such minister or officer, without a compliance with its requisitions, is punishable by a penalty of five hundred dollars. A due regard for the public morals,

and the interest of the community, in view of the marital rights, duties and obligations, is recognized and inculcated. The sanction of religious and legal rites is enjoined to elevate this contract, so far as form is concerned, in making it, above all others among men. Such a provision, by statute, whilst it designates the moral character of a community, operates as a preservative of the interests which are involved in one of the great relations which constitute the foundation of society.

In this brief view of the common law, in relation to this subject, then how does the case stand as affected by the statute? There is no prohibition of the marriage of a minor, who may be under fourteen years of age, expressed. The statute is merely cumulative in its operation, and cannot have the effect of repealing the common law, so as to render the contract void. Such has been the decision of this court, as well as the courts of last resort in nearly all the states of the union, in declaring the effect of statutes similar to ours. *Wycoff* v. *Boggs*, 2 Halsted 128; 2 N. H. 268; 3 Marshall 370.

We will now consider the case in view of the rights of the parent, the child and the interests of society, as existing in this country.

The parties to the contract being capable of making it, and it being valid in law, so as to secure the parties to it all their legal rights, and bind them to the observance of the obligations and duties involved, it clearly follows, that the law holds the claims of the husband, from the time of the marriage, as paramount to those of the parent. The common law observes the divine injunction, that "forsaking father and mother, the husband and wife shall cleave together; and that they twain shall be one flesh;" in effect recognizing a great and holy domestic relation, essential to the well being of our race, and conservative of the paramount interests of society and government. Thus the natural tendency of the human heart under the control of divine and municipal law, is made to operate as a blessing to man, instead of a curse.

But, it is contended that the common law gives the parent the control, society, and service of the child during the entire term of minority, which is until the age of twenty one years. This, as a general principle, is true. Every general rule however, has its exception. Exigency arising from circumstances beyond the control of human foresight, sometimes requires the special interposition of rightful power, to aid the best general system, in working harmoniously to the attainment of the most truthful result. In England, from whence we derive our common law, many reasons, in view of the governmental organization there, exist for establishing a general system, on this subject and determining its operation differently from that which necessarily must prevail here. Such is the law of descent of estates, primogeniture, &c. that their distinctive and controlling power operate directly upon the relation of parent and child. These distinctions do not exist in this country. The domestic or private relations therefore are to be so far held independent of them. In this country there is no legalized classification of the citizens, establishing castes in society. We have, and can have no such thing, under the constitution of our country as a legalized nobility, possessing privileges by law, peculiar to themselves as citizens; and a common people whose condition is distinctly fixed by restraining laws. The peculiar institution of England, in this respect, must, necessarily, have operated with controlling effect in shaping the common law there. Nevertheless from what we have already said it is seen that even there in the absence of special statutory provision a marriage after the age of consent is held valid. The minor child, taken by the obligations of the new relation established by the solemnization of the marriage contract, from the control of the parent, or natural guardian, is held to be amenable to the law of the land governing husband and wife. This being the case, under the common law, it is clear that rights belonging to the parent, must be interfered with, by the observance of the duties of the marital relation.

---

Goodwin *v.* Thompson.

---

So that we see the incompatibility of both these relations existing at the same time without interception, as to the same person, in respect of his claims and obligations. The wife cannot be held to "serve two masters" therefore the right of the husband must prevail.

By the common law then, there is no difference between the case of a minor twelve years old, and one twenty years old, in effect as to the consequences of the contract.

This being the common law, it can only be changed by statutory provision such as was resorted to there. By the statute 26, George 2, ch. 33, it was enacted, "that all marriages celebrated by license where either of the parties is under twenty one, without the consent of the father, or if he be not living, of the mother, or guardian, shall be absolutely void." This superceded the common law, but we have no such statute. The effect of this statute is discussed by Sir William Blackstone; among other things he says, " much may be said, and has been said, both for and against this innovation upon our ancient laws and constitution. On the one hand, it prevents the clandestine marriages of minors which are often a terrible inconvenience to those private families wherever they happen. On the other hand restraints upon marriages, especially among the lower class, are evidently detrimental to the public by hindering the increase of the people; and to religion and morality by encouraging licentiousness and debauchery among the single of both sexes; and thereby destroying one end of society and government."

In this country the law of itself recognizes no higher and lower class. Its effect is intended to be uniform without respect to persons.

If an action will lie on behalf of the parent for the procurement of the marriage of his daughter without doing violence to her rights, she being a minor, whether she be of the age of thirteen years or twenty, what would be the consequence? Two thirds, perhaps more, of the females of our land have been, and most likely will be,

married before they arrive at the age of twenty one years. Litigation for speculation might be resorted to; and a strong motive would be furnished to the parent to withhold his consent. Long and well established usage promotive of the best interests of society would be disturbed by restraining marriage; and the public interests would be materially injured, morally and politically. In this case it is not pretended that the daughter of the plaintiff was imposed upon by her husband or the defendants below; that any force or fraud was used or practiced by him or them upon her; or that any thing was done, *mala fide*, of which she, or the plaintiff, complains; but on the contrary, that the parties were married, in good faith, with her full consent. In this, the case at bar, is distinguished, by plain marks, from the case in *Hill* v. *Holbart*, 2 Root, page 48. In that case a gross fraud was practiced upon the daughter; she was seduced, and afterwards deceived into a marriage with a vagrant, who was hired to practice the imposition, in the garb of respectability, in order to prevent a cause of action at law. She was made the victim of outrage. There is no such allegation here. This case stands upon the complaint of the parent, on the ground of the loss of service. The books are, so far as we have been able to find them barren of cases like this. Public opinion, as well as policy co-operating with private interest and convenience, by long usage seems to have established the right of the husband to the society and service of the wife though she be a minor, to the exclusion of that of the parent, after marriage. Indeed, a natural sense of justice, in the exercise of a mind uninfluenced by passion or caprice, would dictate the acquiescence of the parent, in the legitimate results of this contract, when legally consumated; in which the dearest interests of his offspring are involved. We hold that parents should maintain and exercise a controlling, advising influence over their children, and such is their right in the forming of matrimonial alliance; and that it is the duty of the child to abide by their counsel, and requirement.

But to render any, or all, persons who might, in the spirit of kindness; actuated by pure motives, be present at the marriage ceremony or afford countenance to the child on an occasion of so much interest, would be in violation of right, propriety and public interest.   Upon a full consideration of the case, in view of the public and private interests and rights involved in the question presented, we are of the opinion, in the absence of fraud imposition or violence, affecting the rights of the child and thereby affecting the relative rights and duties of parents, that this action cannot be maintained, and that the court erred in overruling the demurrer.

Judgment reversed.

*P. Smith*, for plaintiffs in error.

*L. A. Thomas*, for defendant.